**EXHIBIT "A"**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 18-3918-MWF (Ex)                    **Date:  December 14, 2020**
**Title:**     Charmane Henderson v. City of Torrance et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

        Deputy Clerk:                                   Court Reporter:
        Rita Sanchez                                    Not Reported

        Attorneys Present for Plaintiff:                Attorneys Present for Defendant:
        None Present                                    None Present

**Proceedings (In Chambers):**        ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND/OR
ADJUDICATION OF ISSUES ON SECOND
AMENDED COMPLAINT [63]

      Before the Court is Defendants City of Torrance, Brian McGee, Josh Burden, Joseph Craft, Daniel Vazquez, Lance Nelson, Christopher Tomsic, and Alex Gonzales's Motion for Summary Judgment and/or Adjudication of Issues on Second Amended Complaint (the "Motion"), filed on May 11, 2020. (Docket No. 63). Plaintiff Charmane Henderson, individually and as a successor in interest to Decedent Deautry Charles Ross, filed her Opposition on May 18, 2020. (Docket No. 67). Defendants filed their Reply on May 22, 2020. (Docket No. 71).

      The Motion was noticed to be heard on June 8, 2020. The Court read and considered the papers on the Motion and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); Local Rule 7-15. The hearing was therefore **VACATED** and removed from the Court's calendar.

      For the reasons set forth below, the Motion is **DENIED**.

I.     **BACKGROUND**

      Plaintiff commenced this action on May 11, 2018. (*See* Complaint (Docket No. 1)). Plaintiff filed the Second Amended Complaint ("SAC") on December 19, 2019. (Docket No. 46). The SAC states seven claims against various Defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-3918-MWF (Ex)                Date:  December 14, 2020
Title:       Charmane Henderson v. City of Torrance et al.

for:  (1) violation of 42 U.S.C. § 1983 for excessive force under the Fourth
Amendment; (2) violation of § 1983 for denial of medical care; (3) violation of
§ 1983 under the Fourteenth Amendment; (4) wrongful death – negligence pursuant
to California Code of Civil Procedure sections 377.60 and 377.61; (6) violation of
California Civil Code section 52.1 (the "Bane Act"); and (7) battery.  (*Id.* ¶¶ 27-62).

The following facts are based on the evidence, as viewed in the light most
favorable to Plaintiff, the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 255 (1986).  The Court notes any relevant putative disputes below.

A.      **The Initial Approach**

On the afternoon of January 1, 2018, Torrance Police Department ("TPD")
Communications received a 911 call regarding a Black adult male, later identified as
Deautry Ross, who was standing in front of a Crate and Barrel store with a pocketknife
in his hand while talking to himself and throwing CDs into the parking lot.
(Defendants' Statement of Undisputed Facts ("SUF") ¶ 1; Plaintiff's Statement of
Genuine Disputes ("SGD") ¶ 1 (Docket Nos. 63-1, 69)); (Declaration of DeWitt M.
Lacy ("Lacy Decl."), Ex. 5, Audio of Dispatch (Docket No. 67-6)).  The 911 caller
reported that Mr. Ross had a knife "open" and "in his hand," but did not report that he
had brandished the knife or threatened or harmed anyone with it.  (Lacy Decl., Ex. 3,
Audio Recording of 911 Call at 00:05-02:00 (Docket No. 67-4)).  The caller also
reported that Mr. Ross might be mentally disturbed and may have been holding a
crackpipe.  (*Id.*).  Plaintiff disputes whether Mr. Ross was actually holding a knife or a
crackpipe, but does not dispute the content of the 911 call.  (SGD ¶ 1).

Defendants Officer Nelson and Officer Vazquez, partnered in the same patrol
car that day, were dispatched to the Crate and Barrell.  Upon arrival, Defendant
Vasquez saw Mr. Ross, matching the description of the call for service, standing
outside of the northern entrance of the Crate and Barrel.  (SUF ¶¶ 2, 3; SGD ¶¶ 2, 3).
Defendant Vasquez did not see Mr. Ross holding a knife or a crack pipe, though he did
see Mr. Ross holding two black sticks in his hands.  (SUF ¶ 6; Plaintiff's Additional

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-3918-MWF (Ex)                    Date:  December 14, 2020
Title:      Charmane Henderson v. City of Torrance et al.

Material Facts ("AMF") ¶ 13 (Docket No. 69 at 63)).  Defendant Vasquez did not see
Mr. Ross acting aggressively or violently towards anyone.  (AMF ¶ 13).

Defendant Nelson identified himself as a police officer and asked Mr. Ross if he
could to talk to him.  (SUF ¶ 3).  Mr. Ross shouted something that Defendant Nelson
did not understand, and then put the sticks in his pockets.  (Id.).  Defendants claim that
Mr. Ross then started walking eastbound at a very fast pace.  (Id. ¶ 6).  Defendant
Nelson followed Mr. Ross in his patrol car and shouted at Mr. Ross:  "Get over here!
Do not run away from us!"  (AMF ¶ 17).  Despite Vazquez and Nelson's awareness
that they were dealing with a mentally impaired person, they did not attempt to use de-
escalation techniques.  (SGD ¶ 3; AMF ¶¶ 15, 16).

Defendant Nelson informed dispatch that Mr. Ross was walking away.  (AMF ¶¶
18, 19).  Moments later, two additional TPD officers, Defendants McGee and Tomsic,
arrived on scene.  (Id.).  Defendant McGee saw Mr. Ross begin to run away from
Defendants Nelson and Vazquez.  (SUF ¶ 4; SGD ¶ 4).  Then, Defendants Nelson,
Vasquez, Tomsic, and McGee chased after Mr. Ross.  (SUF ¶ 8; SGD ¶ 8).  As Mr.
Ross ran, he appeared frightened, begging the officers:  "Don't hurt me!  I'm sorry!"
(SDF ¶ 9; AMF ¶ 20).

## B.     **The Physical Confrontation**

As Mr. Ross reached the grassy area near an entrance to the parking garage,
approximately 130 feet away from the northern entrance of Crate and Barrell, he
stopped running, turned toward officers in an act of surrender, and tossed several
miscellaneous items, including the two long sticks, CDs, and papers high into the air.
(AMF ¶ 21; SUF 11).  Though Defendant McGee described the papers and
miscellaneous items that Mr. Ross threw as "confetti" during his deposition,
Defendants now attempt characterize Mr. Ross's tossing of the items into the air as an
"assault."  (*Compare* AMF ¶ 21 *with* Motion at 4).  Surveillance footage confirms that
Mr. Ross threw the items high into the air, several feet above Defendants' heads.
(Lacy Decl., Ex. 13, Parking Garage Security Video at 04:30).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 18-3918-MWF (Ex)                    Date:  December 14, 2020**
**Title:       Charmane Henderson v. City of Torrance et al.**

According to Defendants, the officers issued various commands, including both to get on the ground and to stop, but Mr. Ross did not comply.  (SUF ¶ 10).  According to Plaintiff, the officers' multiple commands were conflicting, which confused Mr. Ross and made it difficult for him to comply.  (SGD ¶ 10).

Though Defendants had received training on how to approach and engage with mentally ill and mentally impaired individuals in the field, they did not employ this training with Mr. Ross.  (AMF ¶ 24).  Rather, Defendant Tomsic retrieved his duty weapon from his holster and pointed it at Mr. Ross.  (*Id.* ¶ 13).  Once Defendant Tomsic saw that Mr. Ross was not holding anything in his hands, Defendant Tomsic holstered his weapon.  (SUF ¶ 13; SDF ¶ 13).  Defendants Tomsic and Nelson then grabbed Mr. Ross and threw him to the ground.  (SUF ¶ 12; AMF ¶ 25).  Defendants then dog-piled on top of Mr. Ross as he lay on the ground in a prone position.  (AMF ¶ 26).  Defendant Nelson pinned Mr. Ross's left shoulder to the ground; Defendant Tomsic straddled Mr. Ross pinning his midsection and right shoulder to the ground; Defendant Vazquez pinned down Mr. Ross's left leg; and Defendant McGee held down both of Mr. Ross's legs.  (*Id.*).

The parties offer conflicting evidence as to what happened while Mr. Ross was on the ground.  The officers testified that Mr. Ross continued to resist and fight with the officers.  (SUF ¶ 16).  Plaintiff disputes this evidence, pointing to witnesses who observed that Mr. Ross was nearly in handcuffs, and was not flailing around or attacking or pushing the officers off of him.  (SDF ¶ 16; Lacy Decl., Exhibit 6, Deposition of Kristy Bellow ("Bellow Depo.") at 82:6-19 (Docket No. 67-7)).  Plaintiff also contends that, to the extent Mr. Ross was resisting, he was doing so only as necessary to protect himself from being crushed by the officers' combined weight of 400 pounds on top on him.  (SDF ¶¶ 19, 21-23, 28, 33, 34).

According to Defendants, Mr. Ross began grabbing toward Defendant Tomsic's belt area, prompting Tomsic to yell, "He's got my gun!"  (SUF ¶ 16).  In response, Plaintiff points to the testimony of witnesses who did not see Mr. Ross holding an officer's gun.  (SDF ¶ 16).  Defendant Nelson began to deliver consecutive knee strikes to Mr. Ross's head while Mr. Ross was pinned down.  (AMF ¶ 28).  Defendants moved

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-3918-MWF (Ex)                     Date:  December 14, 2020
Title:     Charmane Henderson v. City of Torrance et al.

Tomsic's firearm out of Mr. Ross's reach.  (*Id.*; SUF ¶¶ 18-19).  Then, Defendant
McGee discharged his taser.  (*Id.*).  The parties disagree about whether the taser ever
actually made contact with Mr. Ross.  Plaintiff points to evidence showing that
Defendant McGee applied the taser to Mr. Ross's upper and lower back three separate
times for a total of twenty-three seconds, acting against Taser product warnings and
trainings, department training and policy, and industry policy.  (AMF ¶ 28).
Throughout the alleged tasing, Mr. Ross cried, screamed, whimpered, and moaned
loudly.  (Bellow Depo. at 48:11-25; Lacy Decl., Ex. 24, Audio Recording of Defendant
Nelson's Belt Recorder at 00:30-01:00 ("Ok, alright!"; "What'd you guys do to
me?")).  Defendants, on the other hand, point to evidence indicating that the taser never
made contact, including that the metal probes were bent inward.  (SUF ¶ 19).

     Minutes later, Defendant TPD Officers Burden, Craft, and Gonzales arrived on
scene.  (AMF ¶ 30).  Defendant Craft claims that when he came over to assist, he saw
Mr. Ross violently kicking at Defendants Nelson and McGee with such force that Mr.
Ross was causing the officers to lose their balance.  (SUF ¶¶ 37-39).  Defendant Craft
also claims that when he relieved Defendant Vasquez in restraining Mr. Ross, Mr.
Ross repeatedly threw Defendant Craft off of his body.  (*Id.* ¶ 42).  Plaintiff disputes
these facts, pointing to the testimony of eyewitnesses who observed the incident but
did not see Mr. Ross forcing all of the officers off of his person.  (SDF ¶¶ 39, 42).
Allegedly in response to Mr. Ross's resistance, Defendant Craft applied the "pressure"
of his knee into Mr. Ross's shoulder for ten to fifteen seconds.  (*Id.*).

     Defendants then folded Mr. Ross's legs and pushed Mr. Ross's ankles to meet
his buttocks.  (AMF ¶ 30).  Defendant Gonzales sat on Mr. Ross's legs with full
body weight to hog-tie Mr. Ross, a technique which law enforcement calls "TARP."
(AMF ¶ 30; SUF ¶ 44).  Defendants left Mr. Ross gasping for air while lying prone and
hog-tied.  ((AMF ¶ 31).  Contrary to department procedure, Defendants did not
immediately place Mr. Ross on his side in a recovery position.  (*Id.*).

     When medical personnel arrived on scene minutes later, Mr. Ross was still hog-
tied with his chest flat on the ground, and was struggling to breathe.  (*Id.*).  Medical

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-3918-MWF (Ex)                Date:  December 14, 2020
Title:      Charmane Henderson v. City of Torrance et al.

personnel noted that Defendants would not allow them to provide immediate medical
attention to Mr. Ross, who was in obvious need of help.  (AMF ¶ 32).  Plaintiff asserts
that Defendants' decision to hog-tie Mr. Ross and leave him on positioned his chest
was inconsistent with TPD training and policy, and unnecessarily exposed him to a risk
of death by asphyxia.  (SGD ¶ 21).

      Mr. Ross went into cardiac arrest at the scene and then died.

      The autopsy of Mr. Ross indicates that he suffered blunt force trauma to his left
temporal at some time during his encounter with Defendants.  (AMF ¶ 28).  The parties
agree that Mr. Ross died of acute cardiopulmonary arrest as a consequence of
methamphetamine intoxication, the struggle with officers, and "state post restraint."
(SUF ¶ 47).  During the deposition of the County medical examiner, the examiner
clarified that "state post restraint" meant that a factor in Mr. Ross's death was
Defendants' handcuffing and tying Mr. Ross in the "hobble restraint," which
"definitely" made it difficult for Mr. Ross to breathe.  (*See* Lacy Decl., Ex. 29,
Deposition of Yulai Wang at 36:6-23 (Docket No. 67-30)).

## II.      **EVIDENTIARY OBJECTIONS**

      The parties advance various objections to the evidence submitted by their
counterparts in connection with the Motion.  Specifically, Plaintiff objects to the
evidence filed by Defendants in support of the Motion, while Defendants object to the
evidence submitted by Plaintiff in support of the Opposition.  (Docket Nos. 68, 71-9).

      The parties' objections are unavailing.  Many of the objections are garden
variety evidentiary objections based on lack of foundation, lack of proper
authentication, and hearsay.  While these objections may be cognizable at trial, on a
motion for summary judgment, the Court is concerned only with the ***admissibility*** of
the relevant ***facts*** at trial, and not the ***form*** of these facts as presented in the Motions.
*See Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal.
2006) (making this distinction between facts and evidence, Rule 56(e), and overruling

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. **CV 18-3918-MWF (Ex)**                    Date:  **December 14, 2020**
Title:        Charmane Henderson v. City of Torrance et al.

objections that evidence was irrelevant, speculative and/or argumentative).  "If the
contents of the evidence could be presented in an admissible form at trial, those
contents may be considered on summary judgment even if the evidence itself is
hearsay."  *O'Banion v. Select Portfolio Servs., Inc.*, No. 1:09-CV-00249-EJL, 2012
WL 4793442, at *5 (D. Idaho Aug. 22, 2012) (citing *Fraser v. Goodale*, 342 F.3d
1032, 1036-37 (9th Cir. 2003)).

Therefore, to the extent the Court relies upon evidence to which the parties
object, the objections are **OVERRULED**.  To the extent the Court does not, the
objections are **DENIED** *as moot*.

## III.    LEGAL STANDARD

In deciding a motion for summary judgment under Federal Rule of Civil
Procedure 56, the Court applies *Anderson*, *Celotex*, and their Ninth Circuit progeny.
*Anderson*, 477 U.S. 242; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  "The court
shall grant summary judgment if the movant shows that there is no genuine dispute as
to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).

The Ninth Circuit has defined the shifting burden of proof governing motions for
summary judgment where the non-moving party bears the burden of proof at trial:

The moving party initially bears the burden of proving the absence of a
genuine issue of material fact.  Where the non-moving party bears the
burden of proof at trial, the moving party need only prove that there is an
absence of evidence to support the non-moving party's case.  Where the
moving party meets that burden, the burden then shifts to the non-moving
party to designate specific facts demonstrating the existence of genuine
issues for trial.  This burden is not a light one.  The non-moving party
must show more than the mere existence of a scintilla of evidence.  The
non-moving party must do more than show there is some "metaphysical
doubt" as to the material facts at issue.  In fact, the non-moving party must

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-3918-MWF (Ex)                Date:  December 14, 2020
Title:       Charmane Henderson v. City of Torrance et al.

come forth with evidence from which a jury could reasonably render a
verdict in the non-moving party's favor.

*Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 n.2 (9th Cir. 2016)
(quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)).  "A motion
for summary judgment may not be defeated, however, by evidence that is 'merely
colorable' or 'is not significantly probative.'"  *Anderson*, 477 U.S. at 249-50.

## IV.    DISCUSSION

Defendants advance six arguments as to why they are entitled to summary
judgment:  (1) the Fourth Amendment excessive force claim fails because the officers'
use of force was objectively reasonable and Defendants are entitled to qualified
immunity; (2) the denial of medical care claim fails because medical care was
promptly summoned; (3) the Fourteenth Amendment claim fails because the officers
did not act with a purpose to harm unrelated to legitimate law enforcement objectives;
(4) the state law claims for wrongful death/negligence, violation of the Bane Act, and
battery fail because the officers' use of force was objectively reasonable; and (5) the
punitive damages claim fails because there is no evidence that Defendants acted with
evil intent.  (Motion at 11-21).

### A.    Fourth Amendment Claim

Defendants argue that the Fourth Amendment claim fails because they
reasonably believed Mr. Ross posed an immediate threat to themselves and others
based on:  (1) the initial 911 call that Mr. Ross had a knife; (2) Mr. Ross's refusal to
comply with repeated commands and flight from officers; (3) Mr. Ross's violent
behavior toward officers; and (4) Mr. Ross's attempt to take an officer's firearm.
(Motion at 12).  Defendants also argue that even if the uses of force were excessive,
Defendants are entitled to qualified immunity.  (*Id.* at 19).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 18-3918-MWF (Ex)**                              **Date:  December 14, 2020**
Title:        Charmane Henderson v. City of Torrance et al.

Plaintiff responds that Defendants' arguments improperly rely on only their evidence, when genuine disputes of material fact preclude the Court from determining whether Mr. Ross posed an immediate threat to Defendants.  (Opposition at 14-21).

"Police use of force is excessive and violates the Fourth Amendment if it's objectively unreasonable under the circumstances."  *Zion v. County of Orange*, 874 F.3d 1072, 1075 (9th Cir. 2017) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Scott v. Harris*, 550 U.S. 372, 383 (2007)).  However, even where excessive force was used in violation of a person's constitutional rights, the officers may not be held liable if those rights were not "clearly established" at the time of the incident.  *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1060 (9th Cir. 2003).

The Court will first address the question of whether Defendants' uses of force constituted a violation of a constitutional right, and then address whether that right was clearly established such that Defendants are not entitled to qualified immunity.

### 1.      Violation of a Constitutional Right

All claims of excessive force in the context of an arrest, stop, or other seizure of a person must be analyzed under the Fourth Amendment's "reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989).  To determine whether the force in executing a detention was reasonable, the Court must weigh the "nature and quality of the intrusion on an individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396.  In analyzing the governmental interests at stake, the Court must consider:  "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "The most important factor is whether the suspect posed an immediate threat." *Zion*, 874 F.3d at 1075 (citing *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc)); *see also Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-3918-MWF (Ex)                Date:  December 14, 2020
Title:      Charmane Henderson v. City of Torrance et al.

        "If the evidence, viewed in the light most favorable to plaintiff, could support a
jury finding of excessive force, defendants aren't entitled to summary judgment."
*Zion*, 874 F.3d at 1075 (citing *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir.
2005) (en banc)).  "Because questions of reasonableness are not well-suited to precise
legal determination, the propriety of a particular use of force is generally an issue for
the jury."  *Tan Lam v. City of Los Banos*, 976 F.3d 986, 997 (9th Cir. 2020) (quoting
*Barnard v. Theobald*, 721 F.3d 1069, 1076 (9th Cir. 2013)); *see also Smith v. City of
Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) ("we have held on many occasions that
summary judgment or judgment as a matter of law in excessive force cases should be
granted sparingly"); *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (same).

        Applying the *Graham* factors here, the Court determines that Plaintiff has
presented a triable issue as to whether Mr. Ross posed an immediate threat of safety to
officers or others (1) when Defendants tasered and hog-tied Mr. Ross; and (2) when
Defendants left Mr. Ross resting on his chest while hog-tied, in violation of police
procedure, after it was apparent that Mr. Ross was struggling to breathe.

        With respect to the first *Graham* factor, the Court "note[s] first that no
underlying crime was 'at issue' — the police had become involved solely because a
[Crate and Barrell employee] was worried that [Mr. Ross] was acting in an emotionally
disturbed manner" and had a knife in his hand.  *See Drummond*, 343 F.3d at 1057.
Importantly, and contrary to Defendants' characterization, the 911 caller did ***not*** report
that Mr. Ross was "brandishing" the knife or otherwise acting in a threatening or
aggressive manner towards anyone.  (Lacy Decl., Ex. 3, Audio of 911 Call).  Indeed,
the 911 caller reported that Mr. Ross was likely mentally impaired; Defendant Officers
believed they were likely responding to a 5150 public safety and welfare check.  (*Id.* at
00:05-02:00; SUF ¶ 7; SDF ¶ 7).  "A mentally ill individual" — like Mr. Ross — "is in
need of a doctor, not a jail cell," as "the purpose of detaining a mentally ill individual
is not to punish him, but to help him."  *Bryan v. MacPherson*, 630 F.3d 805, 829 (9th
Cir. 2010).  This factor therefore diminishes the reasonableness of Defendants' uses of
force against Mr. Ross.  *See id.*; *see also Drummond*, 343 F.3d at 1057 ("we have held
that a detainee's mental illness must be reflected in any assessment of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-3918-MWF (Ex)                     Date:  December 14, 2020

Title:       Charmane Henderson v. City of Torrance et al.

government's interest in the use of force," as the interest "is diminished by the fact that the officers are confronted, not with a person who has committed a serious crime against others, but with a mentally ill individual") (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001)).

       As for the third *Graham* factor, although it is relevant that Mr. Ross ran away after police attempted to talk to him, the Court "cannot totally discount the issue of race." *See United States v. Brown*, 925 F.3d 1150, 1156 (9th Cir. 2019) ("the burden of aggressive and intrusive police action [] falls disproportionately on African-American . . . males"; "There is little doubt that uneven policing may reasonably affect the reaction of certain individuals — including those who are innocent — to law enforcement.") (quoting *Washington v. Lambert*, 98 F.3d 1181, 1187-88 (9th Cir. 1996)).  The evidence demonstrates that Mr. Ross appeared visually afraid and was yelling "don't hurt me, don't hurt me!" as he ran away.  This indicates that Mr. Ross "fle[d] from police for [his] safety," rather than to evade arrest or to harm himself or others.  *See id.*

       With respect to the second *Graham* factor, "a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern."  *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1130 (9th Cir. 2017) (internal quotation marks and citation omitted).  "A desire to resolve quickly a ***potentially*** dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury." *Id.* (citation omitted) (emphasis added).

       Once Defendants Nelson, Vasquez, McGee and Tomsic caught up with Mr. Ross, but before they initially tackled him, they had him outnumbered and surrounded. (AMF ¶ 23).  While Defendants claim that Mr. Ross was an immediate threat at this point because he "assaulted" officers by throwing items at them, Plaintiff pointed to evidence showing that Mr. Ross threw these items, which were described as "confetti," high into the air in an act of surrender, rather than directly at officers.  (*Id.* ¶ 21).

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-3918-MWF (Ex)                    Date:  December 14, 2020
Title:        Charmane Henderson v. City of Torrance et al.

Defendants also assert that Mr. Ross was an immediate threat because he reportedly had a knife.  (*See* Motion at 12).  Considering that Mr. Ross was not holding, brandishing, or threatening officers with the knife, the mere report that Mr. Ross possessed a knife did not give Defendants carte blanche as a matter of law to initiate a violent physical confrontation by striking, tasering, and hog-tying Mr. Ross to death.  *See Tan Lam*, 976 F.3d 1001 ("though [the officer] makes much of the fact that [the decedent] was armed with scissors immediately prior to the first shot, our precedent has long made clear that the suspect's possession of a weapon at some point in the incident does not provide an officer with carte blanche to use deadly force"); *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) (reviewing Ninth Circuit case law which has made clear "that the fact that the 'suspect was armed with a deadly weapon' does not render the officers' response per se reasonable under the Fourth Amendment," and holding that summary judgment for the officers was inappropriate given evidence that the suspect was pointing a gun away from the officers when they shot him); *Glenn v. Washington County*, 673 F.3d 864, 873-78 (9th Cir. 2011) (holding jury could conclude that the defendant's decision to shoot a beanbag gun at an individual holding a pocketknife was excessive where the individual did not brandish knife or threaten anyone with it).

Defendants also claim that their use of the taser and hog-tie restraints were reasonable because Mr. Ross was violently resisting, fighting, kicking, and throwing Defendants off of him and, at one point, grabbed the butt of Defendant Tomsic's firearm.  (Motion at 12).

"[I]n the deadly force context, [the Court] cannot 'simply accept what may be a self-serving account by the police officer.'"  *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).  "Because the person most likely to rebut the officers' version of events — the one killed — can't testify, the judge must carefully examine all the evidence in the record to determine whether the officer's story is internally consistent and consistent with other known facts."  *Id.* (citations and internal alterations omitted).  "This includes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-3918-MWF (Ex)          Date:  December 14, 2020
Title:      Charmane Henderson v. City of Torrance et al.

circumstantial evidence that, if believed, would tend to discredit the police officer's
story."  *Id.* (citation and internal quotation marks omitted).

        The following would allow a reasonable jury to find against Defendants'
account:

        ***First***, Defendants used the taser and hog-tie ***after*** Defendants had already moved
the firearm out of Mr. Ross's reach.  (*See* Declaration of Julie Flemming ("Flemming
Decl.), Ex. D, McGee Depo. at 37:16-43:10; 47:1-48:10 (Docket No. 63-9)).  This fact
is significant, as the relevant determination is whether an individual was an ***immediate***
threat, not whether the individual was ***previously*** a threat.  *See Tan Lam*, 976 F.3d at
1002 (citing with approval *Meyers v. Baltimore Cnty.*, 713 F.3d 723, 735 (4th Cir.
2013) (qualified immunity denied when officers continued to tase suspect who had
been involved in a family dispute after he was no longer a threat)); *Mattos v. Agarano*,
661 F.3d 433, 445-46 (9th Cir. 2011) (holding reasonable jury could find defendants'
use of taser excessive where plaintiff "actively resisted arrest" but posed no
"immediate threat to the safety of the officers or others"); *Bryan*, 630 F.3d at 832
(holding use of taser was excessive where plaintiff was mentally ill and posed no
immediate threat to officer's safety).  Even crediting Defendants' testimony that Mr.
Ross attempted to grab Tomsic's firearm, a jury could nonetheless determine that the
taser and hog-tie were excessive uses of force if the facts establish that that Mr. Ross
no longer posed an immediate threat once Defendants moved the firearm from Mr.
Ross's reach.

        ***Second***, contrary to Defendants' account, Plaintiff presented evidence that
onlooking witnesses did not observe Mr. Ross repeatedly attempt to attack, fight, or
shake Defendants off of him.  (SDF ¶¶ 39, 42).  Outnumbered four to one (later seven
to one) and pinned to the ground, it is difficult to imagine how Mr. Ross could have
garnered the amount of force which Defendants purport he used, particularly given
that, at a height of 5'7" and a weight of 150 pounds, Mr. Ross was not a large man.
(*See* Flemming Decl., Ex. CC Autopsy Report at COT 00794 (Docket No. 63-17)).
Perhaps a jury will find Defendants' account credible.  But the circumstantial evidence

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-3918-MWF (Ex)                    Date:  December 14, 2020
Title:      Charmane Henderson v. City of Torrance et al.

of Mr. Ross's small size, the number of officers holding their weight on top of him, and witness testimony suffices to create a triable issue as to whether Mr. Ross was, in fact, resisting and fighting to a degree that would render the tasering and hog-tying reasonable.  Viewing the evidence in the light most favorable to Plaintiff, "after [Mr. Ross] was "knocked to the ground where the officers cuffed his arms behind his back as he lay on his stomach, a jury could reasonably find that he posed only a minimal threat to anyone's safety."  *Drummond*, 343 F.3d at 1057-58 (holding that officers' use of force was excessive where mentally ill decedent had committed no crime, was not violently resisting, was handcuffed, was lying on his stomach, and was struggling to breathe as officers crushed him into the ground).

*Third,* it is difficult to imagine what threat Mr. Ross could have posed to officers or others once Defendants had him bound and hog-tied.  (*See* Flemming Decl., Ex. D, McGee Depo. at 48-3:10) (explaining that the TARP hog-tie gives officers "full control" over detained person).  Plaintiff pointed to evidence showing that Defendants were aware of proper TARP procedure, which requires officers to immediately roll a suspect onto his side once the restraint is secured.  (*See id.*; SDF ¶ 21).  Yet, Plaintiff's evidence shows that Defendants did not follow this procedure with Mr. Ross.  (AMF ¶ 31).  In violation of department procedure, Defendants allegedly left Mr. Ross hog-tied and resting flat on his chest, a position which made it difficult for him to breathe and ultimately contributed to his death.  (*Id.*).  This evidence also supports a determination that officers' force was excessive.  *See Drummond*, 343 F.3d at 1062 (explaining that police department training, which was contrary to defendants' conduct, was relevant to whether the force employed was "objectively unreasonable" and "to whether reasonable officers would have been on *notice* that the force employed was objectively unreasonable") (emphasis in original).

At this stage, construing all inferences in Plaintiff's favor, the Court cannot determine that Mr. Ross was acting in such a dangerous or violent manner as to render Defendants' use of the taser and hog-tie reasonable as a matter of law.  To be clear, by reaching this decision the Court makes "no determination about the officers'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-3918-MWF (Ex)                    Date:  December 14, 2020
Title:       Charmane Henderson v. City of Torrance et al.

credibility, because that's not [its] decision to make," but leaves it "it to the jury."
*Cruz*, 765 F.3d at 1080.

## 2.      Clearly Established Constitutional Right

Having determined that a reasonable jury could find a violation of a
constitutional right, the Court turns to whether that right was clearly established at the
time of the incident.  To make that determination, the Court must ask whether it would
be clear to a reasonable officer that his or her conduct was unlawful in the situation he
or she confronted.  In determining the applicability of qualified immunity, the Court
considers "whether the state of the law at the time of the alleged wrong gave the
defendants fair warning that their alleged treatment of the plaintiff was
unconstitutional."  *Davis v. City of Las Vegas*, 478 F.3d 1048, 1056 (9th Cir. 2007).

"The qualified immunity standard 'gives ample room for mistaken judgments'
by protecting 'all but the plainly incompetent or those who knowingly violate the
law.'"  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S.
335, 341, 343 (1986)).  However, "there need not be a case 'directly on point.'" *A. K.
H. by & through Landeros v. City of Tustin*, 837 F.3d 1005, 1013 (9th Cir. 2016)
(quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013)).

"Case law has clearly established that an officer may not use deadly force to
apprehend a suspect where the suspect poses no immediate threat to the officer or
others."  *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010).  Specific to the facts
here, *Mattos* clearly established "that use of a taser in drive-stun mode on a person who
'actively resisted arrest,' but posed no 'immediate threat to the safety of the officers or
others,' constituted excessive force."  *Bonivert v. City of Clarkston*, 883 F.3d 865, 880
(9th Cir. 2018) (holding that officers were not entitled to qualified immunity where a
reasonable jury could find that plaintiff posed no immediate threat to officers' safety
when officers tased plaintiff) (quoting *Mattos*, 661 F.3d at 445-46).  And *Drummond*
clearly established that officers employ excessive force where they apply crushing
force on a mentally ill suspect who poses no immediate threat to officers or others and
is cuffed, on his stomach, and struggling to breathe.  *Drummond*, 343 F.3d at 1058-62.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 18-3918-MWF (Ex)**                    **Date:  December 14, 2020**
Title:        Charmane Henderson v. City of Torrance et al.

If Plaintiff's version of events is true (that Mr. Ross did not violently resist and posed no immediate threat to Defendants at the time that he was tased and hog-tied), the law was clearly established at that time that Defendants' use of force was unreasonable.  See *Mattos*, 661 F.3d at 445-46; *Drummond*, 343 F.3d at 1058-62. Therefore, the Court cannot determine that Defendants are entitled to qualified immunity as a matter of law.  *See Munger v. City of Glasgow Police Dept.*, 227 F.3d 1082, 1087 (9th Cir. 2000) ("Summary judgment on qualified immunity is not proper unless the evidence permits only one reasonable conclusion.").

Accordingly, the Motion with respect to the Fourth Amendment claims is **DENIED**.

Because Defendants merely repeat their Fourth Amendment arguments in challenging Plaintiff's "redundant" state law negligence and battery claims, the Motion with respect to these claims is **DENIED**.  (*See* Motion at 17-18).

The Motion with respect to the Bane Act Claim is also **DENIED**.  *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014) ("a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under [the Bane Act]") (citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) ("[T]he elements of the excessive force claim under [the Bane Act] are the same as under § 1983.")).

**B.    <u>Denial of Medical Care Claim</u>**

Defendants argue that they are entitled to summary judgment on Plaintiff's denial of medical care claim under § 1983 because Defendants called an ambulance for Mr. Ross, two officers monitored Mr. Ross's breathing and pulse while he was hog-tied, and because Mr. Ross was "still breathing" when the ambulance arrived.  (Motion at 16).

"[S]uspects have a Fourth Amendment right to 'objectively reasonable post-arrest medical care' until the end of the seizure."  *Estate of Cornejo ex rel. Solis v. City*

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-3918-MWF (Ex)                    Date:  December 14, 2020
Title:        Charmane Henderson v. City of Torrance et al.

of Los Angeles, 618 F. App'x 917, 920 (9th Cir. 2015) (citing *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006)).  "This means that officers must 'seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital.'"  *Id.* (quoting *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986)).

Plaintiff pointed to evidence showing that even after medical help arrived on scene, Defendants prevented medical personnel from providing immediate treatment to Mr. Ross, despite his obvious distress and visible difficulty breathing, by refusing medical personnel's requests to uncuff and untie Mr. Ross.  (AMF ¶ 32).  This evidence suffices to create a triable issue as to whether Defendants denied Mr. Ross his right to objectively reasonable post-arrest medical care.  *See Tatum*, 441 F.3d at 1099 (holding that officers were required to obtain medical help when the decedent's labored breathing after being handcuffed made it clear that he was in physical distress).

In essence, Defendants contend that because they called an ambulance and eventually allowed medical personnel to treat Mr. Ross, their conduct in denying Mr. Ross immediate medical attention was reasonable.  (*See* Reply at 7).  This argument is patently mistaken.  A suspect's Fourth Amendment right to post-arrest medical care would be meaningless if police could avoid liability by summoning medical help but subsequently prevent medical personnel from actually accessing the suspect on site.

Defendants are not entitled to qualified immunity because *Tatum* put them on notice that their conduct was illegal.  *See Estate of Cornejo*, 618 F. App'x at 920 (citing *Tatum*, 441 F.3d 1090).  After *Tatum*, no reasonable officer could have believed that he was entitled to deny medical personnel immediate access to a suspect who "had clear injuries, was shaking uncontrollably, had substantial and increasing difficulty breathing, and was groaning and non-responsive.  [Defendants] would not need more Ninth Circuit cases to know that ignoring those needs would violate a suspect's constitutional rights."  *Id.* at 921 (affirming denial of qualified immunity).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-3918-MWF (Ex)                    Date:  December 14, 2020
Title:        Charmane Henderson v. City of Torrance et al.

Accordingly, the Motion as to the denial of medical care claim is **DENIED**.

## C.        Fourteenth Amendment Claim

        The Supreme Court "has made it clear" that "only official conduct that 'shocks the conscience' is cognizable as a due process violation." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (citation omitted).  "In determining whether excessive force shocks the conscience, the court must first ask whether the circumstances are such that actual deliberation by the officer is practical." *Wilkinson*, 610 F.3d at 554 (citation and internal alterations omitted).  "Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience." *Id.* (citation omitted).  "On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Id.* (citation omitted).

        Neither party discusses whether actual deliberation was practical here.  (*See* Motion at 16; Opposition at 23; Reply at 8).  Arguably, under Plaintiff's version of the facts, it was.  Though the officers received a report of a mentally unstable person in possession of a knife, they received no report that the person was brandishing the knife or threatening to harm anyone with it.  (*See* Lacy Decl., Ex. 3, Audio of 911 Call).  And when Defendants had Mr. Ross surrounded, "[Mr. Ross] was not pointing the [knife] at anyone and had not given any indication that he was likely to harm anyone, [therefore] there was no 'rapidly escalating' confrontation or 'extreme emergency' here that would have deprived [the officers] of the opportunity to confer with [each other] and formulate a plan to ascertain what was happening before" acting.  *Nicholson v. City of Los Angeles*, 935 F.3d 685, 694 (9th Cir. 2019) (affirming district court's application of the deliberate indifference standard where officer rushed toward and shot decedent who was holding a gun near others who may have been in danger but "was not engaged in any threatening or menacing behavior").  Though Mr. Ross walked away after Defendants initially approached him, given that Mr. Ross could be viewed as never having harmed or threatened police or others (the "confetti" view of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.   CV 18-3918-MWF (Ex)                    Date:   December 14, 2020
Title:        Charmane Henderson v. City of Torrance et al.

the encounter), the Court "cannot say that this situation gives an officer 'no time for reflection,' as in a high-speed chase involving a fleeing suspect in a fast-moving vehicle." *Id.* (citation omitted).

Moreover, after Defendants had hog-tied Mr. Ross, they would have had the opportunity to deliberate about his positioning. But instead of following procedure by placing Mr. Ross on his side in a recovery position, Defendants left Mr. Ross hog-tied with his chest on the ground and his head turned to the side as he struggled to breathe. (AMF ¶ 31).

A reasonable jury could conclude that this evidence shows that Defendants disregarded "a known or obvious consequence" of their actions. *See Nicholson*, 935 F.3d at 693 (explaining that the "deliberate-indifference inquiry should go to the jury if any rational factfinder could find" that an officer "disregarded a known or obvious consequence of his action") (citations omitted).

But even if there were not sufficient time for actual deliberation, the Court would nonetheless deny summary judgment under the intent-to-harm standard.

Under Plaintiff's version of the facts, Defendants responded to what they believed was a 5150 welfare check of a mentally impaired person. (SDF ¶ 7). After seeing that Mr. Ross was not threatening or harming anyone, and had no knife in his hands, Defendants chased after him, despite his obvious mental impairment and terrified pleas. (AMF ¶ 12-16). Once Defendants caught up to Mr. Ross — who at no point threatened or pulled a weapon on officers, others, or himself — he attempted to surrender. (*Id.* ¶¶ 21-26). Yet, instead of employing de-escalation techniques, which Defendants were trained to use with mentally ill individuals like Mr. Ross, Defendants chose to tackle, beat, and restrain him. Defendants continued to strike, taser, and hog-tie Mr. Ross even after he was pinned to the ground by multiple officers and arguably could not have posed a threat to anyone. (AMF ¶¶ 23, 28-31). Even after medical personnel had arrived, Defendants kept Mr. Ross tied up. (*Id.* ¶ 32). Further, Defendants intentionally obstructed Mr. Ross's ability to receive immediate medical care, in disregard of his labored, shallow breathing. (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 18-3918-MWF (Ex)                  Date:  December 14, 2020**
Title:      Charmane Henderson v. City of Torrance et al.

Assuming Plaintiff's version of events, Defendants' behavior "is exactly the kind of 'brutal' conduct the Due Process Clause protects against."  *Zion*, 874 F.3d at 1077 (reversing summary judgment on Fourteenth Amendment claim where officer kicked decedent in the head after decedent was in the fetal position and arguably incapable of causing harm or fleeing) (citations and internal quotation marks omitted).  Seven police officers struck, tasered, and hog-tied a thin, mentally ill man who had just run from police in terror while pleading:  "Please don't hurt me" and "I'm sorry."  Defendants then denied that mentally ill man immediate access to medical care while he was crying, begging, and struggling to breathe.  Such conduct "is bound to offend even hardened sensibilities."  *See id.*

"A jury could reasonably find that [Defendants] knew or easily could have determined that [they] had already rendered [Plaintiff] harmless.  If so, a reasonable jury could also conclude that [Defendants] w[ere] acting out of anger or emotion rather than any legitimate law enforcement purpose."  *See id.*

Accordingly, the Motion as to Plaintiff's Fourteenth Amendment claim is **DENIED**.

Because the record creates a triable issue as to Defendants' intent to harm or deliberate indifference, the Motion as to punitive damages is also **DENIED**.  S*ee Ward v. City of San Jose*, 967 F.2d 280, 286 (9th Cir. 1991) ("Punitive damages are proper under section 1983 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'") (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)); *see also Dang v. Cross*, 422 F.3d 800, 809 (9th Cir. 2005) (holding that punitive damages may be awarded in a § 1983 action where the defendant acts oppressively, *i.e.*, "with unnecessary harshness or severity as by misuse or abuse of authority or power or by taking advantage of some weakness or disability or the misfortunes of another").cc

Accordingly, the Motion is **DENIED**.

IT IS SO ORDERED.